UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Turnberry Townhome Association,<br><br>Plaintiff,<br><br>v.<br><br>State Farm Fire and Casualty Company,<br><br>Defendant. | Case No. 24-cv-1947 (SRN/TNL)<br><br><br>**ORDER** |

Brenda Sauro and Brock P. Alton, Hellmuth & Johnson, PLLC, 635 Bielenberg Drive, Suite 200, Woodbury, Minnesota 55125, for Plaintiff.

Lindsey A. Streicher and Scott G. Williams, Haws-KM, P.A., 30 East Seventh Street, Suite 3200, St. Paul, Minnesota 55101, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

Plaintiff Turnberry Townhome Association sued Defendant State Farm Fire and Casualty Company over a disagreement about how much interest State Farm owes on an independent appraisal award. The parties both move for summary judgment. For the reasons below, the Court denies State Farm's motion [Doc. 21], and grants in part Turnberry's motion [Doc. 26].

**I.    Background**

The timeline of events is undisputed. On May 19, 2022, a storm caused hail damage to Turnberry's property, so Turnberry sought coverage under its policy with State Farm. (Doc. 1-1 ¶¶ 6–22.) In a July 22 letter of representation (LOR), Gavnat and Associates— a public insurance adjuster—notified State Farm that it would represent Turnberry. (*Id.*

¶¶ 15–19; Doc. 29-2; Doc. 29-3.) On October 6, State Farm paid out only $688,571.98, far less than Turnberry's claim for damages. (Doc. 1 ¶¶ 21–22; Doc. 24-2; Doc. 29-4.) So in the new year (January 10, 2023), Turnberry demanded an appraisal. (Doc. 24-3.)

On May 8, the appraiser sided with Turnberry and issued an award of $1,259,887.84 in actual cash value (ACV) and $1,574,859.80 in replacement cash value (RCV). (Doc. 24-5; Doc. 1 ¶¶ 22–25.) State Farm paid the remaining $551,315.86 in ACV on May 31, and it paid $7,938.91 in interest on June 22. (Doc. 24-6; Doc. 24-9; Doc. 29-7.) Then in December, it paid the $314,971.96 difference between RCV and ACV (called "recoverable depreciation"), plus $15,583.40 in building permit fees and $15,367.84 more interest. (*See* Doc. 24-8; Doc. 29-6, Doc. 29-12.)

Still, Turnberry believed that State Farm owed more interest, so it sued. (Doc. 1 at 11–12.) Under Minnesota law, Turnberry was entitled to ten percent interest per year "from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first." Minn. Stat. § 549.09, subd. 1(b), (c)(2). Turnberry argues that Gavnat's July 2022 LOR started the interest clock. (Doc. 28 at 5; Doc. 29-2; Doc. 29-3.) But State Farm argues that interest was not triggered until Turnberry demanded appraisal in January 2023. (Doc. 23 at 12.) The six-month gap is worth well over $80,000. Turnberry calculates that State Farm still owes $85,144.62 on top of the $23,306.75 it has paid. (Doc. 28 at 11.) While State Farm calculates that it owed only $21,147, meaning it overpaid. (Doc. 33 at 8.)

2

**II.     Analysis**

When reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, making no credibility determinations and giving it the benefit of all reasonable inferences to be drawn from the record. *Cottrell v. Am. Fam. Mut. Ins.*, 930 F.3d 969, 971 (8th Cir. 2019). The Court will only grant a motion if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

This matter is before the Court because of diversity jurisdiction, so Minnesota law governs. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The Court is bound by the Minnesota Supreme Court's decisions. *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006). And where Minnesota's "highest court has not decided an issue," this Court must "predict how [the Minnesota Supreme Court] would resolve" it. *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006). Among the most helpful predictors are opinions of the Minnesota Court of Appeals, which often present "the best evidence of what the state law is." *Id.* (cleaned up).

**A.     Start of the Interest Clock**

Turnberry argues that Gavnat's July 2022 LOR was a "written notice of claim" sufficient to start the running of interest. Minn. Stat. § 549.09, subd. 1(b). (Doc. 28 at 5–7; Doc. 31 at 3–4.) The Court agrees. In an email, Gavnat wrote:

> Dear State Farm Claims,
>
> Please See LON, LOR, and W–9 for Turnberry Townhome Association. DOL [Date of Loss] is 5–19–22. Ryan Wagner

3

>is your PA. His contact information is . . . . Please send Master Policy Documents to Ryan.

(Doc. 24-1; Doc. 29-2.) Then, in the attached LOR, Gavnat wrote:

>**INSURED: Turnberry Townhome Association**
>**INSURER: State Farm Claims**
>**CLAIM NUMBER: 23-36X845C**
>**POLICY NUMBER: 93-KN-2466-2**
>**DWELLING LOCATION OF LOSS: 1801 American Blvd. Suite 21, Bloomington, MN 55425**
>**TYPE OF LOSS: Wind/Hail**
>**ADJUSTER FOR INSURED: Ryan Wagner**
>
>To whom it may concern:
>
>This is to notify you that Gavnat and Associates have been hired as a public adjuster to assist Turnberry Townhome Association in the handling of this claim. . . . .

(Doc. 29-3.) This qualifies as a written notice of claim under Minnesota law.

State Farm responds that the email and LOR were insufficient because they "d[id] not provide any details regarding the alleged damage or to what aspects of the property the damage occurred." (Doc. 33 at 3; *see also* Doc. 23 at 10–11; Doc. 33 at 4–7; Doc. 35 at 1–4.) But Minnesota law does not require that level of detail.

The Minnesota Supreme Court has not specifically defined "written notice of claim." *Selective Ins. Co. of S.C. v. Sela*, 11 F.4th 844, 851 (8th Cir. 2021). But federal courts in Minnesota have found that a written notice is simply a "demand for payment (or other similar assertion) contained in a writing." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 845 F. Supp. 2d 975, 978 (D. Minn. 2012); *see also Flint Hills Res. LP v. Lovegreen Turbine Servs.*, 04-cv-4699 (JRT/FLN), 2008 WL 4527816, at *9 (D. Minn. Sept. 29, 2008) (collecting cases). And the Minnesota Court of Appeals has

confirmed that § 549.09 "does not prescribe the content of" a written notice. *Indep. Sch. Dist. 441 v. Bunn–O–Matic Corp.*, C0-96-594, 1996 WL 689768, at *10 (Minn. Ct. App. Dec. 3, 1996). A notice need not include, for example, a "demand for a specific amount of money." *Blehr v. Anderson*, 955 N.W.2d 613, 621 (Minn. Ct. App. 2021). It just needs to make the insurer "aware of the insured's injuries" because that sparks the insurer's "affirmative duty to inquire into the particular benefits that the insureds were claiming and to provide them with a position on their claim." *Bunn–O–Matic*, 1996 WL 689768, at *10 (cleaned up) (quoting *Higgins v. J.C. Penney Cas. Ins.*, 413 N.W.2d 189, 191–92 (Minn. Ct. App. 1987)). Put another way, a notice has enough detail if it is "sufficient, in light of the circumstances known to the noticed party, to allow the noticed party to determine 'its potential liability from a generally recognized objective standard of measurement.'" *Blehr*, 955 N.W.2d at 622 (quoting *Bunn–O–Matic*, 1996 WL 689768, at *10).

Gavnat's notice met this standard. Take *Blehr*, for example. There, the Minnesota Court of Appeals found sufficient an LOR that simply "identified [Blehr's] attorney, advised the insurer that he was representing [Blehr], and provided his contact information." 955 N.W.2d at 621. The LOR did not provide any more detail; instead, it *asked* for information like "confirmation of the existence of the policy, the policy limits, and the claim number for the accident, as well as copies of any photographs, repair estimates, and statements regarding the insurer's investigation of the accident." *Id.* The insurer argued that this LOR was not a written notice of claim because it did not demand a specific amount of money. But the court disagreed, concluding that "the letter sufficiently notified the insurer that [Blehr] was making a claim for damages as a result of the accident and that the

5

insurer, based upon the information in the letter and in its claim file, was sufficiently notified of its potential liability to [Blehr]." *Id.*

Here, Gavnat's notice contained more detail. It made clear that Turnberry was making a claim for hail and wind damage on May 19, 2022. It listed Turnberry's policy number, allowing State Farm to consult its own records and confirm whether the loss was covered under the policy. And it even included a claim number, indicating that State Farm had already received enough information to assign one. State Farm had all the information it needed to fulfill its duty to inquire into the particular benefits Turnberry was claiming and assess its potential liability. Indeed, it determined in short order that it owed at least $688,571.98. *Cf. Sela*, 11 F.4th at 851 (noting that "[t]hree days after notice, [the insurer] assigned its first adjuster," and "[t]wo days after that, the adjuster was investigating the damage").

To the extent that State Farm argues that a written notice needs enough detail for a reader to determine exactly how much the insurer might owe without looking beyond the document's four corners, the Court is unpersuaded. The Minnesota Court of Appeals necessarily rejected that argument when it held that the contents of a written notice should be considered "in light of the circumstances known to the noticed party" and found the *Blehr* LOR sufficient. 955 N.W.2d at 622; *see also id.* ("[T]he insurer, based upon the information in the letter *and in its claim file*, was sufficiently notified of its potential liability to respondent." (emphasis added)). Considering what it already knew, State Farm had what it needed to determine its potential liability. Insurers do not issue policies without

6

knowing the location and value of a property, among many other details. And they do not open claim files until they have learned of damage to that property.

The Court is also unpersuaded that Minnesota law requires greater detail. For this proposition, State Farm relies on *Savanna Grove Coach Homeowners' Association v. Auto-Owners Insurance*, in which Judge Eric C. Tostrud observed that a townhome association's email "indicated that the damage affected the townhome community, listed various types of damage, and included photographs of the damage." 19-cv-1513 (ECT/TNL), 2020 WL 468905, at *9 (D. Minn. Jan. 29, 2020). Based on this passage, State Farm implies that a notice of loss must include such details. (*E.g.*, Doc. 33 at 4–6; Doc. 35 at 1–2.) Not so. The court was simply illustrating how much detail the email, in fact, had in that case. The court did not imply, much less find, that this was the minimum level of detail required.

More informative is Judge Tostrud's earlier opinion in *Creekview of Hugo Association v. Owners Insurance*, 386 F. Supp. 3d 1059, 1067–71 (D. Minn. 2019), on which both *Savanna Grove* and *Blehr* relied. *See Savanna Grove*, 2020 WL 468905, at *8–9; *Blehr*, 955 N.W.2d at 620–21. There, the townhome association's insurance manager simply emailed:

> Good afternoon,
>
> I need to open a claim for this community. Below are the details:
>
> DOL: 6/11/17
>
> Cause: Hail

7

> Please have the assigned adjustor contact me and let me know the claim number once you have record of it.
>
> Thank you[.]

*Creekview*, 386 F. Supp. 3d at 1068.  The email did not list more than one broad category of damage.  It did not provide photographs.  It did not include the policy number.  It did not even give the general address.  Yet the court found the email "sufficiently specific" because it "notified [the insurer] of [the] loss, the fact that [the insured] was making a claim under the policy, and the cause of the damage (hail)." *Id.* at 1068–69.

So too here.  Gavnat notified State Farm of Turnberry's loss, the fact that Turnberry was making a claim under the policy, and the cause of the damage (wind/hail).  True, Gavnat's notice—unlike the *Creekview* email—did not refer to a "community," which would have "at least suggested that the extent of the damages was not confined to a single building but to the townhome complex as a whole." *Id.* at 1068–69.  But State Farm did not need notice that more than one building was likely impacted; that fact would be clear upon inspection.  And Gavnat's LOR included the word "Association," which similarly communicated that a group of homes was making the claim.

Finally, State Farm argues that Gavnat's notice was insufficient because the LOR listed the wrong address.  (*E.g.*, Doc. 33 at 3.)  But Gavnat remedied this mistake by listing the policy number and claim number, among other information, in the same LOR.  These details made clear that the address was merely a typo, and State Farm does not argue that the mistake caused any confusion or delayed its investigation.

All told, the Court predicts that the Minnesota Supreme Court would find Gavnat's notice sufficient as a matter of law. Section 549.09's plain text requires only "a written notice of claim." A higher bar "would invite arbitrary line-drawing by courts," would "encourage gamesmanship by insurers," and "would be inconsistent with the twin purposes of pre-award interest: compensating the plaintiff for the loss of use of the money and promoting settlement." 386 F. Supp. 3d at 1069–70 (citing *Burniece v. Ill. Farmers Ins.*, 398 N.W.2d 542, 544 (Minn. 1987)).

The parties do not dispute that State Farm received Gavnat's notice on July 22, 2022. The Court finds the notice sufficient to trigger interest and accordingly grants Turnberry partial summary judgment on that basis.

B.    **Calculation of Interest**

Turning to the proper calculation of interest, State Farm advocates for two methods of crediting prior payments. (Doc. 23 at 13–15; Doc. 33 at 7–9.) It starts by pointing out that once an insurer has made a payment, the insured "ha[s] that money in hand and needs no compensation for the loss of its use," so it makes sense to "credit[] any initial payment against the amount on which pre-award interest accrues." *Creekview*, 386 F. Supp. 3d at 1072. (Doc. 23 at 13.) Turnberry does not dispute this point. (Doc. 28 at 7–11.) The Court agrees that a payment "should be excluded from the pre-award interest calculation once that payment was made." *Creekview*, 386 F. Supp. 3d at 1071.

But State Farm then goes farther and argues that *no* interest should accrue on any portion paid by the time of the award, even if it is paid long after the written notice. In State Farm's view, "a 'payment-by-payment' approach" is "incorrect" because "it suggests

9

that an insurer owes interest on *every* claim rather than only those that end in an appraisal award.  Pre-award interest only exists when there is an award, so it is logical to deduct, as a lump sum, all payments issued by the insurer prior to appraisal." (Doc. 33 at 8 n.1.)

On this point, the Court disagrees.  State Farm's approach would incentivize holding on to payments until the days, or even minutes, before an independent appraisal because an eleventh-hour payment would be credited all the same.  That would undermine both purposes of pre-award interest—compensating the plaintiff for the loss of use of the money and promoting settlement.  *Burniece*, 398 N.W.2d at 544; *see also Blehr*, 955 N.W.2d at 618.

Accordingly, the Court predicts that the Minnesota Supreme Court would hold that a "partial payment can reduce [an insurer's] pre-award interest obligation" only "once it [is] made."  *Creekview*, 386 F. Supp. 3d at 1071 n.6; *see also Woodland Creek Manor Homes Ass'n v. AmGUARD Ins.*, 587 F. Supp. 3d 865, 871 (D. Minn. 2022) (reiterating the same); *Elm Creek Courthome Ass'n. v. State Farm Fire & Cas. Co.*, 971 N.W.2d 731, 743 (Minn. Ct. App. 2022), *rev. denied* (Minn. May 17, 2022) (citing *Creekview* for a related proposition).  The parties should calculate interest on that basis.

The Court acknowledges that there are minor factual disputes regarding the dates of payment.  Accordingly, the parties are ordered to meet and confer in the next 30 days and endeavor to settle this issue.  Absent settlement, the Court will conduct an evidentiary hearing to resolve this matter.

## III.   Order

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Doc. 21] is **DENIED**;

2. Plaintiff's Motion for Summary Judgment [Doc. 26] is **GRANTED IN PART**; and

3. The parties shall meet and confer to settle the dispute as to dates of payment and report back to the Court within 30 days of this order.

Dated:  March 10, 2025

/s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge